

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00030-CR

_____

CHARLES FRANCIS WILLIAMS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 354th District Court
Hunt County, Texas
Trial Court No. 30,023

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

The clear surveillance video recording at Sharyland Utilities in Hunt County depicts two white males working together to steal personal property from Sharyland's premises before they tripped an alarm. One of the men, later identified as Charles Francis Williams, wore a light blue shirt sporting two crossed oars and the words "E. Coast … Club Coastal Rowing Team" and was seen carrying bolt cutters. The other man, later identified as Francis Andrew Stankiewicz, wore a dark blue shirt and can be seen on the video loading spools of copper wire onto a meter truck, described as a "2011, half-ton, GMC, 4-wheel drive" bearing Sharyland identification on both doors. On the video, one can see the two men scramble, once the alarm goes off, with the man in the light blue shirt approaching Sharyland's meter truck, standing by as his associate in the dark blue shirt gets in, closing the door to the meter truck, and running out of the scene carrying bolt cutters as the associate drives the meter truck away.

Unfortunately for the pair of thieves, the meter truck was equipped with a GPS tracking device, allowing law enforcement officers to track the truck to property owned by Katie Brown, where authorities found Williams, Stankiewicz, a Ford Ranger truck owned by a relative of Stankiewicz, and ultimately the Sharyland truck. Inside the Ford truck were found two pairs of bolt cutters, other tools, and the light blue shirt. The missing copper wire, never recovered, was valued at an estimated $180.00.

Williams was convicted by a jury of theft of copper wire having a value of less than $20,000.00.[1] *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(F)(iii) (West Supp. 2015). Williams pled "true" to three of the State's enhancement allegations and was sentenced to ten years' imprisonment. On appeal, Williams argues that the evidence is not legally sufficient to support his conviction, essentially because he was not found in possession of the stolen copper. Because we find that Williams' conviction is supported by legally sufficient evidence that he was a party to the theft, we affirm the trial court's judgment.

In reviewing the record for the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We review for legal sufficiency of the evidence under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

---

[1]In a companion case, Williams was convicted of unauthorized use of a vehicle, which he appeals in our cause number 06-15-00031-CR and which we decide today in a separate opinion.

The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. at 240.

Pursuant to its indictment, the State was required to prove that (1) Williams, individually or acting together with Stankiewicz, (2) appropriated copper wire (3) valued at less than $20,000.00 (4) without the effective consent of owner Jerry Ervin, an employee of Sharyland, (5) with intent to deprive Ervin of the copper wire. *See* TEX. PENAL CODE ANN. § 31.03 (West Supp. 2015).

As mentioned above, the surveillance video recording is of good quality. The video shows the two men approaching a Sharyland meter truck and service truck with tools in hand. Both men begin canvassing the area for items to take. The men pluck items from the service truck and place the stolen goods into the meter truck, a "2011, half-ton, GMC, 4-wheel drive" with "Sharyland stickers on both side on the doors." The man wearing the dark blue shirt loads several spools of copper wire into the meter truck. According to Ervin's testimony, the disturbance triggered Sharyland's alarm systems. On video, the men are seen scrambling in an effort to escape. The man wearing the dark blue shirt drives off in the meter truck. As his accomplice drives away, the man in the light blue shirt runs off camera while carrying bolt cutters.

As Ervin approached the scene of the theft, he discovered that the chain-link fence had been cut and that the thieves had stolen three rolls of copper wire, "bolt biters," and the meter truck. Ervin called the police and started tracking the meter truck, through use of its GPS tracking

4

system. Henry Potts, a deputy with the Hunt County Sheriff's Office, obtained the meter truck's location from Ervin and informed Trooper Kent E. Layton and Deputy Ricardo Valenzuela of the address where the meter truck had stopped.

According to the GPS tracking device, the meter truck was located on property belonging to Brown. Layton and Valenzuela spotted a "[m]aroon, purplish" Ford Ranger truck in front of Brown's home, but did not see the meter truck. They knocked on Brown's door and, after several minutes of questioning Brown, discovered that two white males, Stankiewicz and Williams, were inside. Layton and Valenzuela reported their discovery to Potts, who asked them to photograph the two male suspects. After comparing the photographs of Stankiewicz and Williams to the suspects on the surveillance video, Potts believed that Layton and Valenzuela had captured the thieves. Potts arrived at Brown's home and began questioning her. According to Potts, Brown stated that Williams and Stankiewicz arrived at her house at the same time, that Williams was driving the Ford Ranger, and that Stankiewicz was driving a stolen meter truck. At trial, Brown testified that Williams arrived at her home hours before Stankiewicz arrived in the stolen utility truck. After finding the stolen meter truck on Brown's property, officers arrested Stankiewicz and Williams.

Following their arrest, Stankiewicz and Williams were both interviewed by Investigator Kelly Phillips. Phillips testified that she had met Williams before on many occasions and positively identified him as one of the thieves depicted on the surveillance video. During the interview, Williams admitted that he had arrived with Stankiewicz at Brown's house, but declined to speak further. Williams had the keys to the Ford Ranger, which was registered to one of

5

Stankiewicz's relatives. Valenzuela recognized the Ford Ranger because he had stopped the vehicle on the night before the theft and testified that it was being driven by Stankiewicz at that time. A search of the Ford Ranger revealed bolt cutters, other tools, and the light blue shirt, which both Phillips and Valenzuela recognized as the shirt worn by one of the thieves in the surveillance video.

The surveillance footage in this case shows two thieves working together to steal items from Sharyland. The thief wearing the light blue shirt fled Sharyland while carrying a pair of bolt cutters. The thief's shirt and the bolt cutters were both found in the Ford Ranger that Williams drove to Brown's house. Phillips, Valenzuela, and Potts all testified that they believed Williams was the person depicted on the surveillance footage. The jury was also in a position to conduct its own comparison of Williams to the man shown on camera. We find that the evidence was legally sufficient to establish that Williams was one of the perpetrators of the Sharyland theft.

Yet, Williams argues that the evidence is legally insufficient because he "was not seen to be in direct possession of the copper wire." Williams was charged individually and as a party to the offense. "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). A "person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2) (West 2011). "Each party to an offense may be charged with commission of the offense." TEX. PENAL CODE ANN. § 7.01(b) (West 2011). The

6

surveillance footage demonstrated that Williams was an active participant in the theft. Because Williams was charged as a party to the theft of the copper wire, which was clearly shown being carried away by his accomplice, we conclude that the jury's verdict of guilt was supported by legally sufficient evidence.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     November 10, 2015
Date Decided:       December 1, 2015

Do Not Publish